## COMMONWEALTH *vs.* JOHN TANG.

No. 04-P-964.

Middlesex. September 15, 2005. - April 11, 2006.

Present: LENK, DUFFLY, & KATZMANN, JJ.

*Constitutional Law,* Confrontation of witnesses. *Evidence,* Testimonial statement, Spontaneous utterance. *Practice, Criminal,* Confrontation of witnesses. *Witness,* Child, Competency.

Certain hearsay statements, made by a frantic young boy to a police officer in response to emergency questioning while the police were securing a volatile scene in the immediate aftermath of a shooting, were neither testimonial per se nor testimonial in fact, and accordingly, their admission in evidence at a criminal trial as spontaneous utterances did not violate the defendant's constitutionally guaranteed confrontation rights. [57-61]

At a criminal trial, the judge did not abuse her discretion, in the face of amorphous allegations by the defendant concerning the competency of a minor declarant, by declining to hold a voir dire examination to ascertain the declarant's competency before admitting the declarant's out-of-court statements as spontaneous utterances. [61-67]

INDICTMENTS found and returned in the Superior Court Department on November 1, 2001.

The cases were tried before *Elizabeth M. Fahey,* J.

*Susan E. Taylor* for the defendant.

*Benjamin Bejar,* Assistant District Attorney, for the Commonwealth.

LENK, J. The issues on appeal arise from the admission in evidence of certain statements that a young boy — the defendant's son — made to a police officer in the immediate aftermath of a shooting. That shooting took place in the boy's family home and involved both his father and his uncle. The boy was not called to testify at trial. Instead, his statements were admitted over objection through the officer's testimony under the spontaneous utterance exception to the rule against hearsay.

On appeal, the defendant asserts reversible error in two respects. First, he claims that the boy's out-of-court statements to police, offered without benefit of confrontation, were testimonial in nature and therefore inadmissible under *Crawford* v. *Washington*, 541 U.S. 36 (2004), and *Commonwealth* v. *Gonsalves*, 445 Mass. 1 (2005). Second, in reliance upon *Commonwealth* v. *King*, 436 Mass. 252, 254 (2002), the defendant maintains that the trial judge erred in admitting the statements as spontaneous utterances without first conducting a voir dire examination of the boy to ascertain his testimonial competency.

On the first point, we conclude that the boy's statements to police were not testimonial in nature and, accordingly, that the defendant's constitutionally guaranteed confrontation rights were not violated by admitting them in evidence. As to the second point, we are of the view that a voir dire examination of the child declarant was not necessary in the circumstances and discern no abuse of discretion in the admission of the challenged evidence.

*Background.* After trial by jury, the defendant, John Tang, sometimes referred to as Toan Tang, was convicted of assault by means of a dangerous weapon in violation of G. L. c. 265, § 15B(*b*), and of various firearm-related offenses.[1]

The defendant shared a single-family house in Framingham with his five year old son Michael,[2] his parents, and his brother Ken. Ken's girlfriend, Sammi Tong, was asleep in Ken's bedroom at about 1:30 P.M. on Sunday, July 22, 2001, while Ken was away from home on an errand. Sammi awoke, hearing the defendant yelling outside the bedroom door and what sounded like a gunshot in the house. She telephoned Ken to come home immediately. Another shot was fired through the bedroom door into the bedroom wall. The defendant appeared in the doorway, pointed a gun at Sammi and accused her of going down into the basement, where he slept with Michael. As

---

[1]The defendant was also convicted of possession of a large capacity firearm and large capacity feeding device in violation of G. L. c. 269, § 10(*m*); use of a large capacity firearm in a felony in violation of G. L. c. 265, § 18B; discharging a firearm in violation of G. L. c. 269, § 12E; and possession of ammunition in violation of G. L. c. 269, § 10(*h*).

[2]A pseudonym.

the defendant was running first upstairs to see whether anyone else was home, then downstairs to chain lock the front door, Sammi fled to a neighbor's house to call 911. Seeking police help, she reported to the dispatcher that "John" fired a gun in the house.

Meanwhile, Ken returned to the house, and after the defendant let him in, a fight ensued between the brothers, during which the defendant pointed a gun at Ken's head. After wrestling for the gun, the two eventually agreed to put it on a table in the kitchen. The police arrived and spoke briefly with Sammi, who was on the neighbor's front porch, visibly upset, crying, and almost hysterical. The police then formed a perimeter around the Tang house, took cover, heard two people inside the house yelling at each other, and saw shadows and movement inside. As officers approached the front door, a frightened-looking little boy, later identified as Michael, briefly appeared on the porch but ran back inside. The police then announced themselves and ordered those inside to come outside; the two brothers emerged and were handcuffed. The defendant told police that there was a gun on the kitchen table.

Knowing that there was a young child inside the house as well as a gun, but not knowing who else might still be there, Detective Patricia Grigas and other officers entered the house to clear and secure it. There, Grigas saw a very upset and shaken Michael standing near the entrance to the kitchen, which was in disarray with pooled blood on the floor. Grigas went into the kitchen to get the gun while scanning the adjacent room for any other people. She asked Michael, whom she described as "very excited, very upset," and "rambling," if anyone else was in the house. He replied, "Kenny and John were fighting," and pointed to the blood[3] in the kitchen. As he ran toward the gun on the table, Grigas pulled him away and asked him again whether there was anyone else in the house. Michael continued to point out the mess in the kitchen and said that the defendant had "fired a gun two times making a loud noise in the house." Michael pointed with both hands in the direction of the base-

---

[3]The blood apparently came from injuries that the defendant sustained in the course of fighting with his brother, rather than from gunshot wounds.

ment and bedroom doors, saying, "He shot there and there making a loud noise in the house."

After being advised of his Miranda rights, the defendant told police that his son had awakened him in the basement to tell him that someone was in the house. He checked the house for intruders, at some point with gun in hand, and pointed it at Sammi when she did not initially answer him. At trial, the defendant did not testify or call any witnesses but, through cross-examination of other witnesses, established that his relationship with household members was strained and that his brother Ken wanted him out of the house so that he could have the defendant's basement room.

*Facts pertinent to appellate issues.* The Commonwealth moved in limine to introduce as spontaneous utterances certain statements made by Sammi and Michael. The judge allowed the motion as to Sammi's statements but reserved her ruling as to Michael's statements in the face of defense counsel's objection that he would not be able to cross-examine Michael, whom the prosecutor was not calling as a witness.[4] Before calling Grigas to the stand, the prosecutor alerted the judge that, through Grigas, he planned to introduce as spontaneous utterances the statements that Michael had made to Grigas in the immediate aftermath of the shooting. The defendant objected, this time essentially on the basis of Michael's testimonial competency given his age, and the asserted impropriety of police "interviewing" such a young child absent adult supervision.

Grigas first testified on direct examination as to other matters and then on voir dire as to the circumstances in which Michael's statements to her had been made. Just before the voir dire, defense counsel pressed the point that it was inappropriate for the police to have done any "interview" of the child and that, were the Grigas voir dire to go forward, he might have to call Michael in "rebuttal." However, counsel noted that getting the child into court would take another day or two and would "create another nightmare for the trial." The judge advised defense

---

[4]The trial took place in 2003, before the 2004 decision of the United States Supreme Court in *Crawford* v. *Washington*, 541 U.S. 36, and before the 2005 decision of the Supreme Judicial Court in *Commonwealth* v. *Gonsalves*, 445 Mass. 1.

counsel that "[i]f you think Michael is a necessary witness . . . you undertake whatever efforts to get him here today." Defense counsel then informed the judge that Michael was unavailable that day.

After the Grigas voir dire examination, the judge indicated her view that the child's statements had been made within the context of a very stressful event, had not been made in response to police questions, were inherently trustworthy, and were admissible as spontaneous utterances. She then invited defense counsel to make "whatever arguments you need to make, call in whatever witnesses you think are appropriate." Counsel responded by remarking that Michael was five years old, that "it's almost impossible for this child to say the things that have been testified to here. He is very, very low verbal skill. He doesn't have the communication abilities that are being professed here . . . . [T]here's no understanding of whether that child has any kind of a mental disability at the point where these officers go in." Defense counsel went on to say that the admission of Michael's statements would create the need for Michael to testify as a witness, which his family did not wish to see happen. Grigas then resumed her trial testimony and Michael's statements were admitted as spontaneous utterances.

Later that day, the judge mentioned to defense counsel that Michael's grandmother appeared to be in the courtroom. Given the question that counsel had earlier raised as to Michael's competence, the judge suggested that "if you want to pursue that line of inquiry, she may well be a person who could speak to that." Defense counsel responded by indicating that he needed some time, that his client did not want Michael to testify, and that if his client would permit the grandmother to testify as to Michael's incompetency, he would not call Michael. The judge also volunteered to craft a child witness instruction for the jury. Subsequently, defense counsel informed the court that the defendant declined to call Michael as a witness; he said nothing further about calling the grandmother to testify or about the proposed child witness instruction.

*Discussion. 1. Whether the admission of the child's statements to police violated the defendant's confrontation rights.* The defendant contends that the out-of-court statements that

Michael made to the police at the scene of the shooting were testimonial. Irrespective of whether such statements satisfied the foundational requirements for admission as spontaneous utterances under our rules of evidence, the defendant maintains that such statements were nonetheless inadmissible under the confrontation clause of the Sixth Amendment to the United States Constitution[5] and art. 12 of the Massachusetts Declaration of Rights.[6] See *Crawford* v. *Washington*, 541 U.S. at 68. His confrontation clause rights were violated by the admission of Michael's testimonial statements because, he argues, no showing had been made as to Michael's unavailability to testify, and even if he had been shown to be unavailable, the defendant had not had a prior opportunity to cross-examine the boy.

The question turns on whether the child's statements were testimonial. While not comprehensively delineating what types of statements would constitute testimonial evidence, the Court in *Crawford* v. *Washington* held that statements made in the course of police investigations are testimonial. *Id.* at 52.[7,8] In *Commonwealth* v. *Gonsalves*, 445 Mass. at 8-9, the Supreme Judicial Court considered whether, in light of *Crawford* v.

---

[5]"The constitutional provision of the confrontation clause trumps the common-law rules of evidence, but a statement can be both testimonial in nature and a spontaneous utterance. Whether some out-of-court statements are admissible under exceptions to the hearsay rule does not change whether admitting them would violate the confrontation clause as newly articulated by *Crawford*." *Commonwealth* v. *Gonsalves*, 445 Mass. at 14.

[6]The defendant mentions art. 12 in passing but makes no arguments specifically concerning it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). We note, however, that "[i]n cases involving the hearsay rule and its exceptions, we have stated that art. 12 provides no greater protection than the Sixth Amendment." *Commonwealth* v. *Whelton*, 428 Mass. 24, 28 (1998).

[7]Quoting from briefs of the parties, the Supreme Court cited other examples of testimonial statements: " 'ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially' . . . [or] 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Crawford* v. *Washington*, *supra* at 51-52 (citations omitted).

[8]The Supreme Court is further considering this issue in two cases heard on March 20, 2006: Davis v. Washington, No. 05-5224, and Hammon v. Indiana, No. 05-5705.

*Washington*, statements that are made to law enforcement agents are testimonial per se. It held that such questioning, including preliminary fact gathering, constitutes interrogation designed to apprehend the perpetrator; questioning of this sort is accordingly deemed testimonial per se. *Id.* at 9. "No further analysis is needed. The statements are inadmissible unless the declarant testifies at trial or formally is unavailable and was previously subject to cross-examination." *Ibid.*

Emergency questioning designed to secure a volatile scene or provide medical care, however, is not related to the investigation of a crime and does not constitute interrogation. "[S]uch questioning is considered part of the government's peacekeeping or community care function," *ibid.*, and "cannot be said to be interrogation. Because the questioning is not interrogation, any out-of-court statements it elicits are not testimonial per se and must be evaluated on a case-by-case basis to determine whether they are testimonial in fact." *Id.* at 10. Whether the questioning at issue had its genesis in the community caretaking function or the need to secure a volatile scene, on the one hand, rather than in the investigative function, on the other, "does not depend . . . on answers to police questions, but on the existence of objective circumstances." *Ibid.* Whether incriminating out-of-court statements that are determined not to be testimonial per se are nonetheless testimonial in fact depends on "whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting a crime." *Id.* at 12-13.

We conclude that the statements Michael made to Grigas are not testimonial per se. The questions were posed on an emergency basis while the police were securing a volatile scene. During her voir dire examination, Grigas testified that she and another officer entered the house to "clear the rest of the residents, knowing already that there was a small child inside, having seen him come outside and run back in." She elaborated that "clear" meant making sure that no one else with weapons was in the house. The first question she put to Michael was whether there was anyone else in the house, a question to which he did not directly respond. Instead, he spoke of "Kenny" and the defendant fighting in the kitchen, pointing to the gun and to

different areas of the house, remarking on the "mess," the gun being fired, and the loud noise. Grigas testified that "[t]here was some confusion because [Michael] referred to 'Toan,' and then I believe at one time he said 'John,' and then, again, 'dad.' . . . So we weren't sure initially if there were two individuals fighting or up to four people fighting." Michael was removed from the house within five to ten minutes of Grigas's arrival there. The trial judge asked Grigas specifically what questions she had asked Michael and was told that "we kept asking him, 'Who else is here?' 'Who's in the house?' . . . . 'What happened to you?' 'Who's here?' 'Who's in the house right now?' "

We see nothing in the record to suggest that the questions put to Michael were in aid of the investigation or prosecution of a crime.[9] Unlike in *Commonwealth* v. *Rodriguez*, 445 Mass. 1003, 1004 (2005), the statements were not made in the context of a "secure scene," nor were they "made in response to investigatory interrogation." See *Commonwealth* v. *Williams*, 65 Mass. App. Ct. 9, 12-13 (2005). The statements that Michael made were not even directly responsive to the questions asked him, and the questions that had been put to him were posed in the context of an emergency for the purpose of securing a volatile scene. The statements are not testimonial per se.

That statements are not testimonial per se does not end the inquiry; we must determine whether the statements were testimonial in fact. Michael was five years old at the time and had just witnessed a bloody fracas in his home involving his father and his uncle, in the course of which he heard a gun being discharged. It is almost inconceivable that, moments after such an event, a child in Michael's condition — described as essentially frantic — could have spoken in contemplation of a

---

[9]The court in *Commonwealth* v. *Gonsalves*, 445 Mass. at 10, anticipated that trial judges will determine, using an objective standard, whether statements elicited by questions from law enforcement agents are testimonial per se. In the event that a judge determines that the statements are not testimonial per se, she will then evaluate them to determine whether they are testimonial in fact. *Ibid.* This trial happened well prior to the *Gonsalves* decision and the judge understandably did not make such express determinations. We have not been requested, nor do we see the need, to remand the matter to the trial judge to make such determinations. The record here reflects that the material facts on the issue are largely undisputed and provide sufficient basis for us to make the necessary determinations.

future legal proceeding. As in *Commonwealth* v. *Foley*, 445 Mass. 1001, 1002 (2005), "[n]othing in the record indicates that [Michael's] intent in making [his] statements was testimonial. Further, a reasonable person in [Michael's] position would not have anticipated that . . . [his] statement[s] would be used against the accused in investigating and prosecuting the crime."[10] We accordingly conclude that the challenged statements were neither testimonial per se nor testimonial in fact and that their admission in evidence as spontaneous utterances did not violate the defendant's confrontation rights.

2. *Necessity of voir dire examination of the declarant to determine testimonial competency before admitting the declarant's out-of-court statements as spontaneous utterances.* A spontaneous utterance is one that is in response to an event "sufficiently startling to render inoperative the normal reflective thought process of the observer," which results in a statement that is a "spontaneous reaction to the occurrence or event and not the result of reflective thought." *Commonwealth* v. *Santiago*, 437 Mass. 620, 623 (2002), quoting from 2 McCormick, Evidence § 272, at 204 (5th ed. 1999). See *Commonwealth* v. *King*, 436 Mass. at 254; *Commonwealth* v. *Kenney*, 437 Mass. 141, 150-151 (2002); *Commonwealth* v. *Correa*, 437 Mass. 197, 201-202 (2002). The proponent of such evidence must show that "there was an exciting event that would give rise to the exception" and that "the declarant displayed a degree of excitement sufficient to conclude that [the] statement was a spontaneous reaction to the exciting event, rather than the product of reflective thought." *Commonwealth* v. *Santiago*, *supra* at 624. That "should . . . end . . . the inquiry." *Id.* at 625. See *Commonwealth* v. *Evans*, 438 Mass. 142, 154-156 (2002); *Commonwealth* v. *Moquette*, 439 Mass. 697, 704-706 (2003). There is "no definite and fixed limit of time. Each case must depend upon its own circumstances." *Commonwealth* v. *Ruiz*, 442 Mass. 826, 833 (2004), quoting from *Commonwealth* v. *DiMonte*, 427 Mass. 233, 239 (1998).

---

[10]Compare *People* v. *Sisavath*, 118 Cal. App. 4th 1396, 1402 (2004); *People* v. *Vigil*, 127 P.3d 916, 924-926 (Colo. 2006); *Herrera-Vega* v. *State*, 888 So. 2d 66, 69 (Fla. 2004); *State* v. *Snowden*, 385 Md. 64, 84-92 (2005); *People* v. *Geno*, 261 Mich. App. 624, 630-635 (2004); *Flores* v. *State*, 120 P.3d 1170, 1178-1179 (Nev. 2005).

The defendant does not suggest that Michael's statements failed to satisfy any of the aforesaid tests. Instead, he appears to claim that the proponent of the evidence must also show, when challenged, that the declarant is competent, and that this is to be accomplished by a voir dire examination of the declarant. He asserts that he did challenge Michael's testimonial competency and that it was accordingly incumbent upon the judge then to have conducted a voir dire examination of Michael to ascertain his competency before admitting his statements as spontaneous utterances. Her failure to do so, he maintains, was reversible error.

The defendant bases his contention on one sentence in *Commonwealth* v. *King, supra* at 255, in which the court, citing *Commonwealth* v. *Crawford,* 417 Mass. 358, 362-363 (1994), *S.C.,* 430 Mass. 683 (2000),[11] stated that "[a]s with any other witness, the declarant must have personal knowledge of the event in question, and must be competent." Unlike the defendant, we do not read *Commonwealth* v. *King* or, for that matter, *Commonwealth* v. *Crawford,* as requiring the trial judge in such circumstances to conduct a voir dire examination of the declarant.

It is true that, under our cases, it has long been held that

---

[11]In *Commonwealth* v. *King,* 436 Mass. at 253, the issue was whether the judge erred in admitting in evidence as spontaneous utterances statements the victim made to police in the immediate aftermath of the incident. At a voir dire hearing of the police officers and victim pertinent to the spontaneous utterance issue, the victim recanted, claiming to have been angry at the defendant and intoxicated when she spoke to the police. *Id.* at 254. There is nothing in the case that suggests a specific competency voir dire of the victim was conducted. Rejecting the defendant's claim that the statements had thus been shown not to have been reliable and that they ought not to have been admitted in evidence, the court observed that there was nothing to suggest a level of intoxication rendering the victim incompetent and that the recantation went to weight and not admissibility. *Id.* at 255-256. In *Commonwealth* v. *Crawford,* 417 Mass. at 361, the declarant was a four year old child who told her grandmother many hours after the shooting had occurred that "Daddy shot Mummy." The child was apparently available to testify as a witness though she did not do so. The issue was whether the child's statement was sufficiently spontaneous to qualify as a spontaneous utterance. In its discussion of that issue, as to which the court concluded that the statement was sufficiently spontaneous, the court also noted that the trial judge had conducted a separate hearing as to the competency of the child witness and determined that she had the capacity to be truthful. *Id.* at 362.

"when a witness is called, and it is objected that by reason of insanity or youthfulness he does not understand the nature of the oath, and is therefore incompetent, it is the duty of the judge to examine into the question of his competency, and to reject him unless he is satisfied that he is competent." *Commonwealth* v. *Reagan*, 175 Mass. 335, 339-340 (1900). As we said more recently in *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 215-216 (1997),

> "The basic rule under G. L. c. 233, § 20, as appearing in St. 1983, c. 145, is that any person of sufficient understanding is qualified as a witness. While age is of importance, it is not the test. An objection, or a request for a hearing, requires the trial judge to conduct a voir dire examination of the witness to determine his or her competency by application of the well established two-prong test repeated in [*Commonwealth* v. *Brusgulis*, 398 Mass. 325, 329 (1986)]: (1) whether the witness has the general ability or capacity to observe, remember, and give expression to that which she ha[s] seen, heard, or experienced; and (2) whether she has understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment. It is also well established that [w]hether the test is met is peculiarly for the trial judge, and his determination will be rarely faulted on appellate review." (Citations and quotations omitted.)

It is within the trial judge's "broad discretion to determine whether a competency hearing is required, and whether a witness is competent to testify." *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 461 (1996).

The bar for competency that has been set, moreover, is not a high one. "[U]nder the modern trend, a judge may accept as competent for testimony a witness whose reliability is, in her judgment, at most, marginally sufficient." *Demoulas* v. *Demoulas*, 428 Mass. 555, 564 (1998). See *Commonwealth* v. *Echavarria*, 428 Mass. 593, 596 (1998) (test for competence "not very stringent"). A child is not presumed to be incompetent to testify. *Commonwealth* v. *Lamontagne*, *supra* at 217 n.5.

It perhaps goes without saying that the above case law addresses the testimonial competency of witnesses who are in court and available to testify. While within the judge's discretion, the decision to conduct a voir dire of an available prospective witness when the judge thinks it prudent is a fairly straightforward matter. The matter is not so straightforward, however, with declarants of spontaneous utterances, whose statements may be offered as such in many instances because the declarant is unavailable to testify in court.[12]

Given the "not very stringent" test we employ in ascertaining testimonial competency, it is by no means clear that the amorphous matters that the defendant brought to the judge's attention as to Michael's competency (five years old, low verbal skills) would have required the judge to conduct a voir dire examination had Michael been available to testify as a witness. We are quite clear, however, that the judge was not required, in the face of such information,[13] to conduct a voir dire examination of Michael as the declarant of spontaneous utterances.

While *Commonwealth* v. *King*, 436 Mass. at 255, indicates that declarants "must have personal knowledge of the event in question, and must be competent," there has not been, to our knowledge, any further elucidation of the point in subsequent cases discussing spontaneous utterances. Absent such guidance, what this entails is perhaps best explained by Professors McCormick and Wigmore. Professor McCormick writes of the "frequently encountered" issue whether the declarant of a spon-

---

[12]The proponent of a spontaneous utterance need neither produce the declarant nor show that the declarant is unavailable. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 28 (1998); *Commonwealth* v. *Rockett*, 41 Mass. App. Ct. 5, 6 (1996); *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. 549, 557 (1997).

[13]While the defendant raised these concerns as to Michael's competency, we do not see anywhere in the record a request that the judge conduct a voir dire examination of Michael to ascertain competency. Further, he did not proffer any additional information to suggest that compelling reasons other than the child's age existed to demonstrate testimonial incompetence. Compare 18 U.S.C. § 3509(c) (1990). In this regard, for reasons that are not entirely clear, the defendant declined to put the child's grandmother on the stand despite her availability and her familiarity with her grandson, a child with whom she shared a home. Nor was the defendant without other means to challenge the reliability of the child's statements. See *Commonwealth* v. *Moquette*, 439 Mass. at 706-707.

taneous utterance "meets the tests of competency for a witness" as follows:

> "In a modified manner, the witness is required to have firsthand knowledge. Direct proof of observation is not necessary; if the circumstances appear consistent with opportunity by the declarant, the requirement is met. If there is doubt, the question should be for the jury. . . .
>
> "On the theory that there is a countervailing assurance of reliability in the excitement of the event, the other aspects of competency are not applied. Thus, an excited utterance is admissible despite the fact that the declarant was a child and would have been incompetent as a witness for that reason, or the declarant was incompetent by virtue of mental illness."

2 McCormick, Evidence § 272, at 209-210. Similarly, Professor Wigmore explains:

> "(a) Upon the ordinary principle applicable to all testimonial evidence . . . and therefore to hearsay statements offered under these exceptions . . . , the declarant must appear to have had an opportunity to observe personally the matter of which he speaks.
>
> ". . .
>
> "(c) By the general principle applicable to these exceptions to the hearsay rule . . . , the declarant must at least not lack the usual testimonial qualifications . . . that would be required of him if testifying on the stand . . . .
>
> "(1) Does the disqualification of infancy . . . exclude declarations otherwise admissible? It would seem not; because the principle of the present exception obviates the usual sources of untrustworthiness . . . in children's testimony; because, furthermore, the orthodox rules for children's testimony are not in themselves meritorious . . . ; and, finally, because the oath test, which usually underlies the objection to children's testimony, is wholly inapplicable to them."

6 Wigmore, Evidence § 1751 (Chadbourn rev. ed. 1976).[14]

In apparent harmony with these scholarly views on the meaning of competency in the context of spontaneous utterances, our case law, see, e.g., *Commonwealth* v. *Moquette*, 439 Mass. at 704-706, suggests that the reliability of such statements derives primarily from the circumstances in which they are uttered rather than from the declarant. Given this, we discern no requirement that a judge in the ordinary course must conduct a voir dire examination of the declarant. Moreover, in light of the circumstances we have set forth in some detail *supra*, as well as the broad discretion that a trial judge enjoys both in the matter

---

[14]Other jurisdictions have concluded, as to the competency of a declarant, that the admissibility of spontaneous utterances comes not from the reliability of the declarant, but from the circumstances in which the statement was made. See *People* v. *Hart*, 214 Ill. App. 3d 512, 521 (1991) ("[t]he competency of the declarant, to testify at trial, or even the identity of the declarant, for that matter, need not be established since the accuracy and reliability of such statements are founded more on the spontaneity of the statements and the lack of time to fabricate"); *People* v. *Wright*, 234 Ill. App. 3d 880, 892 (1992) (conduct of a two year old judged incompetent to testify was admitted as a spontaneous declaration). See also *In the Interest of O.E.P.*, 654 P.2d 312, 318 (Colo. 1982) ("[t]he element of trustworthiness underscoring the excited utterance exception, particularly in the case of young children, finds its source primarily in 'the lack of capacity to fabricate' "); *Henry Vogt Mach. Co.* v. *Chamberlain*, 279 S.W.2d 224, 226 (Ky. App. 1955) (out-of-court statements of insane man admitted as excited utterances); *Moore* v. *State*, 26 Md. App. 556, 561 (1975) ("testimonial qualifications do not apply to spontaneous declarations"); *State* v. *Hamby*, 992 P.2d 1266, 1269-1270 (Mont. 1999) (out-of-court statements made by a woman with Down Syndrome admissible, although she had been judged incompetent to testify by the lower court); *State* v. *Simmons*, 52 N.J. 538, 542 (1968) (out-of-court gestures by a sixteen year old deaf-mute, with an intellectual age of less than seven years, who was incompetent to testify as matter of law, admissible to identify the defendant as her assailant).

Contrast *People* v. *Sullivan*, 117 A.D.2d 476, 478-479 (N.Y. 1986) (since child under twelve presumed to be incompetent to be sworn, "there is no logical reason why his statements should become admissible simply because they were made out of court"); *State* v. *Burnette*, 125 Ohio App. 3d 278, 289 (1998) (although an understanding of truth and falsehood was not a prerequisite to admission of an excited utterance, a hearing was required to determine if a mentally retarded declarant could perceive and communicate impressions of fact); *State* v. *Wallick*, 153 Ohio App. 3d 748, 751 (2003) (rebuttable presumption that children under ten were not competent and a hearing was required to determine whether a ten year old child was capable of receiving and recollecting the information contained in her statements). Massachusetts, we note, unlike Ohio and New York, does not presume that young children are incompetent to testify.

of determining the admissibility of spontaneous utterances, see *Commonwealth* v. *Grant*, 418 Mass. 76, 81 (1994); *Commonwealth* v. *Santiago*, 437 Mass. at 624 (reversal warranted only when there is a clear case of improper exercise of discretion), and in the matter of assessing witness competency, see *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980); *Commonwealth* v. *Gamache*, 35 Mass. App. Ct. 805, 806 (1994), we fail to discern any abuse of discretion in the admission of Michael's statements as spontaneous utterances. Indeed, much to the contrary, the judge's handling of the matter was careful, measured, and eminently reasonable.

*Judgment affirmed.*