## COMMONWEALTH *vs.* DEREK HARTNETT.

No. 07-P-1504.

Essex. June 2, 2008. - August 28, 2008.

Present: RAPOZA, C.J., GRAHAM, & MEADE, JJ.

*Rape. Assault and Battery. Evidence,* First complaint, Demonstration, Spontaneous utterance.

This court declined to prohibit first complaint evidence in sexual assault cases where the Commonwealth's evidence includes a percipient third-party witness to the assault; accordingly, at the trial of an indictment charging rape of a child in violation of G. L. c. 265, § 23, no unfair prejudice inured to the defendant from the admission of first complaint testimony in addition to the testimony of the victim and of a child who observed the sexual assault of the victim, where the first complaint testimony provided the jury with information that permitted them to make a fair assessment of the victim's credibility. [470-473]

The judge at a criminal trial properly exercised his discretion in permitting the prosecutor to dim the courtroom lights as a demonstration, to which a witness then compared the lighting conditions of the crime scene. [473-474]

At the trial of an indictment charging rape of a child, the judge did not abuse his broad discretion in admitting as a spontaneous utterance a statement that one of the victim's sisters made to another sibling about having witnessed the alleged incident, where the evidence supported the judge's finding that the declarant continued to be under the influence of the exciting event even though she had referred to other insignificant matters before uttering the statement. [474-475]

At the trial of an indictment charging the defendant with assault and battery of a child, sufficient evidence existed to permit the jury to conclude that the victim did not consent to being tickled by the defendant and that the victim struggled to escape from the tickling. [475-477]

INDICTMENTS found and returned in the Superior Court Department on August 25, 2004.

The cases were tried before *Howard J. Whitehead,* J.

*Neil L. Fishman* for the defendant.

*Kenneth E. Steinfield,* Assistant District Attorney, for the Commonwealth.

MEADE, J. In 2004, the defendant was indicted for rape of a child in violation of G. L. c. 265, § 23, and assault and battery of another child in violation of G. L. c. 265, § 13A. Following a jury trial in Superior Court, the defendant was convicted of both charges. He was sentenced to a term of from six to seven years in prison for the rape conviction, and to three years' probation upon his release from prison for the assault and battery conviction. On appeal, the defendant claims that: it was error to admit first complaint testimony when there was an eyewitness to the rape; the judge abused his discretion by permitting the courtroom lights to be dimmed as a demonstration; the judge abused his discretion by admitting testimony as a spontaneous utterance exception to the hearsay rule; and there was insufficient evidence to support his conviction of assault and battery. We affirm.

1. *Background.* a. *The crimes.* In 2004, the seven year old victim, James,[1] was living in New Hampshire with his parents, Donna and Richard, and his three sisters: Linda, age nine; Bailey, age twelve; and Cathy, age fourteen. Once or twice each month, James and his sisters would visit Douglas, their maternal grandfather. Douglas lived in Methuen with his "lady friend," the defendant's mother. The defendant lived in Lawrence, but often would visit his mother in Methuen.[2] The children knew the defendant and got along well with him.

On a February night in 2004, Donna brought James and Linda to stay at Douglas's house overnight. The defendant was also there, and he too spent the night. James and Linda played indoors and out, and had dinner at a restaurant with their grandfather. In the morning, the defendant took the children shopping with money that his mother provided.

Around noon, Donna arrived with Bailey and Cathy, and the children all played while Donna visited with her father. After her mother arrived, Linda went looking for James. Her search took her into the basement, where she wove her way past the clutter, attempting to find her younger brother. Upon turning a

---

[1] Pursuant to G. L. c. 265, § 24C, we employ a pseudonym for the victim. To further insulate his identity, pseudonyms also have been assigned to the family members discussed in this opinion.

[2] The defendant was thirty-three years old at the time of the assaults.

corner around a tall box, Linda saw James sitting in a wheel-chair.[3] The defendant was standing in front of him, his sweat pants were pulled down to his knees, and his penis was in James's mouth.[4] When Linda turned to run away, the defendant grabbed her, put her on the couch, and began to tickle her on her stomach with both of his hands. Linda struggled to get away by pushing the defendant's arm and by "mov[ing] around" until she was able to escape up the stairs.

Once upstairs, Linda immediately found her sister, Bailey, and urgently asked her to go outside together and play; Linda was "scared and sad" about what she had witnessed. Linda was anxious to go outside, and she suggested the two play hopscotch and go to see a tree she had climbed earlier that day. According to Bailey, as they walked towards the woods in the rear of the house, Linda turned around and said that the defendant and James "had been doing something bad."[5] Bailey insisted that Linda tell their mother what she had witnessed.

Back inside the house, Linda found her mother in the living room. Linda looked "visibly upset, nervous," and had her "head down." Linda told her mother that she "saw Derek and [James] doing bad things downstairs."[6] Upon hearing what the defendant had done, Donna became very upset and frantically gathered the children to leave the house. Douglas went to find James, and saw him and the defendant walking away from the house toward the woods, James ahead of the defendant.

With the children all collected, Donna brought them to a restaurant, where she separated James from the others in order to speak to him. James was pale, visibly upset, on the verge of tears, and would not make eye contact with his mother. When she asked him what had happened at his grandfather's house, James initially insisted that nothing had occurred. When Donna

---

[3] James testified that he was sitting on the basement floor, not in a wheelchair.

[4] James testified that the defendant touched him and put his "pee" or "pee-pee," which James knew served an excretory function, in his mouth. Linda testified that James had the defendant's "private spot" in his mouth.

[5] Bailey's testimony was admitted as a spontaneous utterance over the defendant's objection. Linda testified that she had told Bailey what she saw in the basement, but she (Linda) could not remember the words she had used to describe what she had seen.

[6] No objection was lodged to this testimony.

informed him that Linda had said otherwise, and that she would bring her over to repeat it, James looked distraught and said, "Derek put his thing in my mouth." Donna telephoned her husband, Richard, and told him what had transpired.

After eating, Donna brought the children to get their hair cut, as previously had been planned, and Richard met her at the hair salon. The family then returned to Douglas's house in Methuen, and Douglas called the police. James stayed in the car with his father; he refused to go into the house. The police arrived, and the defendant was arrested at his home later that evening.

b. *The defense.* The defendant did not testify and produced no witnesses to testify on his behalf. Through cross-examination and argument, the defendant constructed a defense based on James's inconsistent responses relative to whether he had been sexually abused, how the poorly lit basement called into question Linda's ability to perceive the assault she had witnessed, the unreliable nature of the courtroom lighting demonstration and Linda's testimony regarding the demonstration, as well as other inconsistencies in the Commonwealth's case and the adequacy of the police investigation.

2. *Discussion.* a. *First complaint testimony.* The defendant claims that the rule permitting the admission of first complaint testimony is not applicable to cases, such as this one, where there is a percipient witness (in addition to the victim) to the sexual assault. We disagree and decline the invitation to create such a restriction.

The only authority cited by the defendant is *Commonwealth v. King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006) (*King*), which was applicable to the 2006 trial of this case, but nonetheless offers his claim no assistance. In *King*, the Supreme Judicial Court revamped the rules regarding admission of fresh complaint testimony and held that the recipient of a sexual assault victim's *first* complaint may testify about the fact of the first complaint, as well as the details of the complaint and the circumstances surrounding the making of that first complaint. *Id.* at 218-219.[7] The court also eliminated the "freshness" require-

---

[7]The court also abandoned a prior rule that prohibited the victim from testifying to the details of her complaint. *King, supra* at 244-246. Overruling *Commonwealth v. Peters*, 429 Mass. 22, 30 (1999), the court held that the

ment of the prior doctrine, *id.* at 242[8]; limited the number of such witnesses to one, *id.* at 242-244; and prohibited the use of first complaint testimony in cases "where neither the occurrence of a sexual assault nor the [victim's] consent is at issue," such as cases "where the sole issue is the identity of the perpetrator," *id.* at 247. See *Commonwealth* v. *Murungu,* 450 Mass. 441, 442-443 (2008).

Absent from the restrictions on first complaint testimony is anything that relates to the type or strength of the evidence the Commonwealth offers in support of the sexual assault charge. To the contrary, the court determined that first complaint testimony "will be considered presumptively relevant" to a victim's "credibility in most sexual assault cases where the fact of the assault or the issue of consent is contested." *King, supra.* In fact, even in the past, when multiple fresh complaint witnesses were permitted, their testimony was not prohibited when the Commonwealth's case included a rare third-party percipient witness. See *Commonwealth* v. *Richardson,* 423 Mass. 180, 181, 185 (1996) (both eyewitness and fresh complaint evidence admitted); *Commonwealth* v. *Graves,* 35 Mass. App. Ct. 76, 82 (1993) (same); *Commonwealth* v. *Kachoul,* 69 Mass. App. Ct. 352, 353-354, 358 (2007) (same).

Rather, the first complaint rule (and its predecessor) came into being to address concerns about potential juror bias relating to the unsubstantiated belief that a sexual assault victim promptly will disclose the assault to someone,[9] that jurors will draw an

---

victim also may testify to the details of what she told the first complaint witness, and why the complaint was made at that particular time. *Id.* at 245-247.

[8]Ostensible delay in a victim's report of a sexual assault to another is not a bar to the admission of first complaint testimony, but it is a factor the trier of fact may consider in weighing the victim's testimony. *King, supra* at 242.

[9]The origin of corroborative complaint evidence can be found in English common law which required victims of violent crime to make "hue and cry" (hutesium et clamor) as a prerequisite to prosecution. See *Commonwealth* v. *Bailey,* 370 Mass. 388, 394 n.7 (1976), citing 2 Pollock & Maitland, The History of English Law Before the Time of Edward I 578-579 (2d ed. 1959). To make "hue and cry" served the dual purposes of alerting the victim's neighbors of their duty to initiate a search for the culprit, and to dispel any suspicion that the victim was complicit in the crime. *State* v. *Hill,* 121 N.J. 150, 157 (1990). See 4 Blackstone, Commentaries 290-291 (1765); 1 Hale, History of the Pleas of the Crown (1736); 2 Hawkins, Pleas of the Crown 116 (6th ed. 1788). By the 1700's, after courts "had refined many evidentiary standards, the 'hue and cry' requirement was no longer a necessary part of a criminal

adverse inference from the absence of such a complaint,[10] and that jurors are generally skeptical of rape allegations. See *King, supra* at 230. When the sexual assault allegation involves a child victim, as is the case here, the rule "gives special consideration to the natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up." *Ibid.,* quoting from *Commonwealth* v. *Fleury,* 417 Mass. 810, 814 (1994). As the court noted in *King, supra* at 239-240. "[j]uror biases may be particularly strong in child rape cases, as some may attribute allegations of sexual assault to the child's imagination or improper adult influence. And jurors may unfairly perceive child complainants as incredible."

In an effort to establish that the admission of Donna's first complaint testimony was unfairly prejudicial to him, the defendant curiously argues that his conviction was based on the unreliable testimony of two children, who were ages nine and eleven at the time of trial.[11] While Linda's and James's testimony differed in some details, the defendant's argument employs the very skepticism against which the rule is designed to protect. Indeed, the admission of Donna's first complaint testimony provided the jury with information that permitted them to make a fair assessment of James's credibility. See *King, supra* at 237.

To adopt the defendant's proposed limitation on the first complaint rule would require the trial judge to conduct a time-consuming analysis of the strength or corroborative value of the eyewitness testimony. Even if there is "strong" eyewitness

---

prosecution, except in rape cases." *King, supra* at 228. See *Commonwealth* v. *Lavalley,* 410 Mass. 641, 646 n.7 (1991). See also *Commonwealth* v. *Cleary,* 172 Mass. 175, 176 (1898) ("[t]he rule that in trials for rape the government may or must prove that the woman concerned made complaint soon after the commission of the offence is a perverted survival of the ancient requirement that she should make hue and cry as a preliminary to bringing her appeal").

[10]Even Professor Wigmore surmised: "It was entirely natural, after becoming the victim of an assault against her will, that she should have spoken out. That she did not, that she went about as if nothing had happened, was in effect an assertion that nothing violent had been done." 4 Wigmore, Evidence § 1135 (3d ed. 1940).

[11]The defendant also argues that James's statement of the assault to his mother constituted unfair surprise where the statement was disclosed to the defendant just a few weeks before trial. Without citations to authority, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), the defendant makes this claim for the first time on appeal and he has, therefore, waived it. See *Commonwealth* v. *Randolph,* 438 Mass. 290, 293 (2002).

testimony, the proposed limitation fails to acknowledge that it is squarely within the province of a jury to entirely discount such evidence, and would leave them wondering why the victim did not report the assault to anyone. In that circumstance, the Commonwealth would be left without the evidentiary counter the rule provides against juror bias and skepticism, which is especially troubling in cases with child victims. See *Mattox* v. *United States,* 156 U.S. 237, 243 (1895) ("[t]he law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused"). See also *Commonwealth* v. *Mutina,* 366 Mass. 810, 832 (1975) ("[i]n our desire to afford the defendant a fair trial, we should not lose sight of the fact that the Commonwealth too has a right to a fair trial").

Prohibiting first complaint evidence in cases where the Commonwealth's evidence includes a percipient third-party witness to the assault not only would have a deleterious effect in sexual assault prosecutions, but it also would do nothing to assist in striking a better balance between the promotion of the truth-finding function of the criminal justice system and ensuring a fair trial for the accused.

b. *The lighting demonstration.* Over the defendant's objection, the judge permitted the prosecutor to dim the lights in the courtroom to demonstrate the lighting condition of the basement at the time Linda witnessed the defendant's assault on James. The defendant opposed the demonstration, given the differences between the courtroom and the basement,[12] and the likelihood that it would confuse the jury. The judge overruled the objection. When the lights were turned off, the prosecutor asked, "Like that?" and Linda replied, "Yeah." With the lights back on, the judge, himself, further inquired, "Was it any darker than that, or lighter than that? Or was it just like we had it?" Linda responded, "Just like you had it."

"A courtroom 'experiment, demonstration, or reenactment'[] may be permitted by the trial judge so long as it 'sufficiently resembles the actual event so as to be fair and informative.' " *Commonwealth* v. *Perryman,* 55 Mass. App. Ct. 187, 193-194

[12]The basement was filled with boxes and other clutter, and the courtroom had five windows compared to the single window in the basement.

(2002), quoting from *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 173 (1983). It lies within a judge's sound discretion to determine whether the conditions are sufficiently similar to make the observation of any value to assist the jury in their task. *Commonwealth* v. *Perryman*, *supra* at 194. On appeal, we will not interfere with the judge's determination unless it is plainly wrong. *Ibid.*

In contradiction to Linda's testimony, which the defendant characterizes as "ludicrous[]," the defendant maintains that the courtroom was much better lit than the basement, and asserts that asking a child to estimate the lighting conditions of the basement two years after the incident "borders on the impossible." However, the judge was entitled to accept Linda's comparison of the lighting conditions, and he was careful to refine the prosecutor's question to Linda to provide a basis for his (the judge's) determination that the demonstration was sufficiently similar to the basement's lighting. This was a proper exercise of discretion, far outside the reach of the plainly wrong. See *id.* at 194-195 (no abuse of discretion to permit demonstration based on witness's testimony regarding the similarity of lighting conditions at the scene and those in the courtroom).

c. *The spontaneous utterance.* The defendant also claims that the judge abused his discretion in admitting as a spontaneous utterance Linda's statement to Bailey that she had seen the defendant and James "doing something bad" in the basement. We disagree. An out-of-court statement "is admissible under the spontaneous utterance exception to the hearsay rule if the proponent shows that the statement was made under the influence of an exciting event, before the declarant had time to contrive or fabricate the statement, and that the statement tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *King*, 436 Mass. 252, 254 (2002). "A spontaneous utterance is one that is in response to an event 'sufficiently startling to render inoperative the normal reflective thought process of the observer . . . .' " *Commonwealth* v. *Tang*, 66 Mass. App. Ct. 53, 61 (2006), quoting from *Commonwealth* v. *Santiago*, 437 Mass. 620, 623 (2002). See *Commonwealth* v. *Kenney*, 437 Mass. 141, 150 (2002).

The defendant does not dispute that Linda witnessing the

defendant's assault on her younger brother "was sufficiently exciting to warrant a spontaneous utterance."[13] Rather, the defendant claims that the excitement had dissipated by the time Linda made the statement, i.e., Linda did not immediately tell Bailey what had happened, but instead suggested that they go outside together and play hopscotch or see a tree Linda had climbed. However, the evidence reveals that the judge was comfortably within his broad discretion when he found that Linda made the statement to Bailey while she was "under the influence of an exciting event." *Commonwealth* v. *King*, 436 Mass. at 254. There was testimony that when Linda approached Bailey, she (Linda) was sad, scared, and anxious to get Bailey away from the house to tell her what had been seen. The fact that Linda referred to other insignificant matters before uttering the statement at issue does not preclude the finding made by the judge that the event continued to influence Linda. See *Commonwealth* v. *Kenney, supra* at 151 (despite intervening events and statements, children's statements made three and one-half hours after startling event qualified as spontaneous utterances). "Strict contemporaneousness is not required, 'so long as it appears that, notwithstanding the passage of some time, the statements were made under the stress of the exciting event' in a context ensuring their reliability." *Ibid.*, quoting from *Commonwealth* v. *Brown*, 413 Mass. 693, 696 (1992). See *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), *S.C.*, 430 Mass. 683 (2000) (four year old child's statement admissible five hours after exciting incident). There was no abuse of discretion.

d. *Assault and battery.* Finally, the defendant claims that there was insufficient evidence to support his conviction of assault and battery of Linda. When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 152 (1999), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

---

[13]The statement also was made on the heels of the defendant's assault and battery on Linda, discussed *infra.*

could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia, supra.* When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See *Commonwealth* v. *Latimore, supra* at 677-678. Because every battery includes an assault, we need only focus on the elements of criminal battery. *Commonwealth* v. *Burke,* 390 Mass. 480, 482 (1983). To prove a violation of G. L. c. 265, § 13A, when the battery at issue is offensive (as opposed to harmful),[14] the Commonwealth must prove beyond a reasonable doubt that the defendant, without justification or excuse, intentionally touched the victim, and that the touching, however slight, occurred without the victim's consent. *Commonwealth* v. *Cohen,* 55 Mass. App. Ct. 358, 359 (2002).

The defendant claims that the evidence was insufficient to permit the jury to conclude that Linda did not consent to being tickled by the defendant. We disagree. The Commonwealth's evidence permitted the jury to find that upon seeing the defendant raping her younger brother, Linda attempted to run away. When the defendant saw Linda, he grabbed her, picked her up, and put her on the couch where he tickled her stomach with both of his hands. Linda struggled to escape, only succeeding when she maneuvered around the defendant and pushed his arm. Free of the defendant, Linda ran up the stairs.

From this evidence, the jury were entitled to infer that Linda did not consent to the touching. See *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980) (to support finding of guilt, inferences drawn by fact finder "need only be reasonable and possible and need not be necessary or inescapable"). The defendant would have us reach a contrary result because the defendant had enjoyed a prior, friendly relationship with Linda, including prior innocent episodes of tickling. The defendant maintains that his tickling of Linda is more consistent with simple horseplay than an assault and battery. While the defendant's view of the evidence is certainly plausible, our appellate function in these circumstances does not permit us to indulge that view. See *Jackson* v. *Virginia,* 443 U.S.

---

[14]When the battery involves a physically harmful touching, lack of consent is not an element. *Commonwealth* v. *Burke, supra* at 483. "But an offensive touching is so only because of lack of consent." *Ibid.*

at 319 n.13. See also *Palmariello* v. *Superintendent of M.C.I. Norfolk*, 873 F.2d 491, 493 (1st Cir.), cert. denied, 493 U.S. 865 (1989) (we are not obligated to "reread the record from a [defendant]'s perspective"). Rather, we must view the evidence in the light most favorable to the Commonwealth. Having done that, we conclude that a rational trier of fact was entitled to find that having been actually caught in the act, the defendant endeavored to prevent Linda from getting away and exposing the crime he had committed. It was also reasonable for the jury to have concluded that Linda struggled to escape from the defendant's tickling diversion, which was offensive in light of Linda's lack of consent. See *Commonwealth* v. *Burke*, 390 Mass. at 483 ("[a] consensual, offensive touching is a contradiction in terms").[15]

Finally, the defendant claims that even if the evidence supports an inference that Linda did not consent to the tickling, "no reasonable person would find being tickled a genuine affront to his personal integrity." However, our law stands on a different footing. "The law of criminal battery protects society's interest in ensuring that its members are free from harmful and offensive touchings." *Id.* at 482. As set out *supra*, what makes the touching offensive is not that it is an affront to the victim's personal integrity as the defendant posits, but only that the victim did not consent to it. Nothing more is required. Unconsented-to tickling of a child in circumstances such as these is not exempt from the protections of G. L. c. 265, § 13A.

*Judgments affirmed.*

---

[15]Contrary to the defendant's view, the tickling need not be "unusually forceful" to constitute an assault and battery. Indeed, all that was required (in addition to the other elements) was a touching, however slight. *Commonwealth* v. *Cohen*, 55 Mass. App. Ct. at 359.