NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1015

COMMONWEALTH

vs.

EDWIN NOVAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of the second-degree murder of Danny Nicacio (victim), armed assault with intent to murder Armando Maisonet, Jr., possession of a firearm without a license, possession of ammunition without a firearm identification (FID) card, and assault and battery of Maisonet by means of a dangerous weapon. On appeal, he claims that: there was insufficient evidence to support his murder conviction; errors in his firearm and ammunition convictions require them to be vacated; and the prosecutor's opening statement and closing argument were improper. We affirm in part and vacate in part.

1. Sufficiency of the evidence. The defendant claims that there was insufficient evidence to support his murder conviction. In particular, he maintains that the evidence was insufficient to identify him as the person who shot the victim. We disagree.

When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 475 (2008), quoting Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 152 (1999). Nor are we obligated to "reread the record from a [defendant]'s perspective." Palmariello v. Superintendent of M.C.I. Norfolk, 873 F.2d 491, 493 (1st Cir.), cert. denied, 493 U.S. 865 (1989). See Commonwealth v. Duncan, 71 Mass. App. Ct. 150, 152 (2008). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

In general, when evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements

of the offense.  See Jackson, 443 U.S. at 324 n.16; Latimore, 378 Mass. at 677-678.  In the circumstances of this case, the defendant does not take issue with specific elements of murder, but rather he claims the evidence did not sufficiently identify him as the perpetrator.  As a starting point, we note that direct evidence of a witness identifying the defendant as the shooter was not required.  Indeed, "[a] conviction may rest exclusively on circumstantial evidence, and, in evaluating that evidence, we draw all reasonable inferences in favor of the Commonwealth."  Commonwealth v. Javier, 481 Mass. 268, 279 (2019), quoting Commonwealth v. Jones, 477 Mass. 307, 316 (2017).  That is what occurred here.

In summary and viewing the evidence in the light most favorable to the Commonwealth, supported by reasonable inferences that the jury were entitled to draw, the defendant was at the Tropigala nightclub[1] on December 23, 1999, into the early morning hours of December 24, 1999.  At approximately closing time, the defendant was outside the nightclub where he employed a handgun to shoot and kill the victim and to wound Maisonet.

The defendant was accompanied to the club by Juan DeCastro, who believed that Maisonet acted like he had a problem with the

---

[1] The victim's uncle owned the club.

defendant that night. This supposition was shared by Maisonet's brother, Juan Lopez, who testified that the defendant, who Lopez identified in a photographic lineup, had a hostile relationship with Maisonet.

At the club's closing time that night, Worcester Police Officer Joseph Tolson, Jr., was stationed outside the club approximately twenty-five feet away. He saw a male get pushed out of the club. Once outside, Tolson watched the male immediately retrieve a handgun from his waistband and fire a shot.[2] When he heard a second shot, he called for backup. When the shooter fled down Benefit Street, Tolson pursued him on foot, but he was unable to catch him. A few days later, a working firearm was found in an alley off Benefit Street; the gun had the defendant's fingerprints on it. Ballistic tests revealed that the bullet casings found at the scene of the shooting matched those that were later test fired from the recovered firearm.[3]

---

[2] Another witness, Santa Vargas, who also knew the defendant, the victim and Maisonet, saw the defendant across the street approaching the club, and then she heard a shot followed by chaos breaking out.

[3] The projectile recovered from the victim had similar markings to those fired from the recovered gun, but it could not be identified as having been fired by the same gun because it was too damaged.

Irma Gonzalez, who knew the defendant, the victim and Maisonet, was at the club the night of the shooting. According to Gonzalez, the defendant was having "problems" with Maisonet and his friends, and the defendant had been recently "jumped" by this group. After the shooting, Maisonet ran back into the club, holding his shoulder, screaming, "The fucking Dominican shot me."[4] At that point, Gonzalez looked out the window and saw the defendant running up Benefit Street.

In the early morning hours of December 24, 1999, the defendant returned to his apartment where his neighbor, Barbara Nieves, saw him; he looked like he had been in a fight. Nieves saw the defendant go to his room, put items into a backpack, and then leave the apartment. Nieves never saw the defendant again. In 2018, the defendant was extradited from the Dominican Republic back to Massachusetts to face his indictments.

From all this evidence, the jury were entitled to find that the defendant intended to shoot Maisonet and killed the victim in the process. The jury could rationally find that the defendant was present at the scene of the murder. See Commonwealth v. Bush, 427 Mass. 26, 30 (1998) (defendant at scene of murder before shots fired). He had a hostile relationship with the intended victim and had an altercation

---

[4] The defendant is of Dominican heritage.

with him that night.  See Commonwealth v. Robertson, 408 Mass. 747, 751 (1990) (defendant hostile toward victim and fought night of murder, helping establish defendant's identity as shooter).  He was seen approaching the club when the shots were fired, and he was seen fleeing the scene of the murder on Benefit Street where a firearm was later found with his fingerprints on it.  See Jones, 477 Mass. at 316-317 ("evidence of the flight path of the single person seen at the scene of the shooting" helped establish defendant's identity as shooter); Commonwealth v. Lavin, 94 Mass. App. Ct. 353, 360 (2018) ("fingerprint evidence coupled with all of the other evidence rationally linked the defendant to the crimes charged").  Also, the shell casings found at the scene of the shooting matched those test fired from the gun bearing the defendant's fingerprints.

Finally, the Commonwealth introduced evidence of the defendant's consciousness of guilt.  Such evidence is probative and can, in conjunction with other evidence, support a verdict of guilt.  See Commonwealth v. Doucette, 408 Mass. 454, 461 (1990).  The Commonwealth presented evidence that shortly after the murder, the defendant packed some belongings, left his apartment, and was never seen by his neighbor again.  Two decades later, he was found in a foreign country.  See

6

Commonwealth v. Carrion, 407 Mass. 263, 277 (1990) ("Flight is perhaps the classic evidence of consciousness of guilt"); Commonwealth v. Lugo, 104 Mass. App. Ct. 309, 319 (2024) (defendant's out-of-state flight in immediate aftermath of shooting provided "strong, if not compelling, evidence of his consciousness of guilt").

Although none of the single pieces of evidence recited above would alone "be enough to convict the defendant," when they are combined, they "form a fabric of proof that was sufficient to warrant the jury's finding beyond a reasonable doubt that the defendant was the person who killed the victim[]." Commonwealth v. Cordle, 404 Mass. 733, 741 (1989), S.C., 412 Mass. 172 (1992), quoting Commonwealth v. Rojas, 388 Mass. 626, 630 (1983). That there were some contradictions among the witnesses' accounts, and in particular between those of Tolson and the civilian witnesses, does not render the evidence insufficient. "[T]he jury may believe part of a witness's testimony and reject part or believe all or reject all." Commonwealth v. Perez, 390 Mass. 308, 314 (1983), S.C., 442 Mass. 1019 (2004).

2. The prosecutor's opening statement and closing argument. The defendant also claims that the prosecutors made improper appeals to sympathy and emotion to the jury in their

opening statement and closing argument that one month after the murder, the defendant's sister-in-law left her infant child in the care of a neighbor for five months. The defendant did not object to these statements, so we review to determine if there was error, and if so, whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002).

"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." Commonwealth v. Chambers, 93 Mass. App. Ct. 806, 819 (2018), quoting Commonwealth v. Staines, 441 Mass. 521, 535 (2004). In her opening the prosecutor stated: "[The neighbor will] also tell you that the minor child who lived in that apartment was dropped off with her for five months until another person came to get that child."

The neighbor testified, without objection from the defendant, that about a month after the shooting, the defendant's sister-in-law left her baby with the neighbor, who cared for him for about five months. In this light, the prosecutor's statement properly forecast this piece of evidence, however it was not relevant to any issue in the case. To the extent it was unclear who the child's father was, defense

8

counsel clarified on cross-examination of the neighbor that the defendant was not the child's father.  This minimized any prejudice to the defendant.

The defendant also contends that the prosecutor's closing argument impermissibly appealed to the jury's sympathy, argued evidence that was not relevant, and misled the jury that he was the baby's father.  "In determining whether an argument was improper we examine the remarks in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial."  Commonwealth v. Teixeira, 490 Mass. 733, 740 (2022), quoting Commonwealth v. Kolenovic, 478 Mass. 189, 199 (2017).

In his closing argument, the prosecutor recounted the neighbor's testimony,

> "And she told you that she was living at 6 Elizabeth Street in the downstairs apartment.  She knew [the defendant and his sister-in-law]; that they lived upstairs.  She said they hung out almost every single night, whether it be on the stairs on doing something else.  She told [you] that they had a minor child.  I think [he] was three or four month she testified to."  (Emphasis added.)

> The prosecutor later stated:

> "When she came back in the defendant was gone.  She has never seen the defendant since the early morning hours of December 24th, 1999.  She talked further about the situation.  That [sister-in-law] stuck around for a little while.  And then she watched [sister-in-law's] child for five months until someone came and got the child."

9

As with the opening statement, we agree with the defendant that the evidence of the sister-in-law's child being left with the neighbor for five months after the murder was not relevant to who shot the victim, and was perhaps an improper appeal to sympathy. However, we disagree that the jury would have been misled that the child was actually the defendant's. Although the prosecutor's argument vaguely attributed to the neighbor stating that "they had a minor child," after referring to the defendant and his sister-in-law, the neighbor's testimony also made clear the defendant's brother also resided in the same apartment. Again, defense counsel clarified on cross-examination of the neighbor that the defendant was not the child's father.

Even if the argument was improper, it did not create a substantial risk of a miscarriage of justice in light of several factors. Contrary to the defendant's argument, the child being left behind was entirely collateral to the central issue of identification. The prosecutor's brief comments on the matter, in a dozen lines of a twenty-four page closing argument, was not the focal point of the argument to say the least. See Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 53 (2003). That there was no objection to the statements lends credence to the belief that they did not create an unfair or prejudicial impact.

10

See Commonwealth v. Johnston, 467 Mass. 674, 695 (2014) (applying substantial "likelihood" test).  Also, although the Commonwealth's case was entirely circumstantial, it was nonetheless very strong.  See Commonwealth v. Saulnier, 84 Mass. App. Ct. 603, 607 (2013).  Finally, the judge instructed the jury on the limited purpose of closing arguments and, more importantly, to "determine the facts based solely on a fair consideration of the evidence[,] . . . to be completely fair and impartial[,] . . . [and] not to be swayed by prejudice, or by sympathy."  See Commonwealth v. Camacho, 472 Mass. 587, 609 (2015) (applying substantial "likelihood" test).  We presume that the jury understood and followed these instructions.  Commonwealth v. Hernandez, 473 Mass. 379, 392 (2015).  These factors eliminated any substantial risk that justice miscarried.

3.  The firearm and ammunition convictions.  Finally, the defendant claims that there was insufficient evidence to support his convictions of possession of a firearm without a license and ammunition without an FID card.  As this case was tried in 2021, the United States Supreme Court had yet to decide New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022).  After Bruen, the Commonwealth bears the burden of disproving that a defendant had a license to possess a firearm when prosecuting a defendant for unlawful possession of a firearm, and the jury

11

instructions must relay this burden.  See Commonwealth v.
Guardado, 491 Mass. 666, 668 (Guardado I), S.C., 493 Mass. 1
(2023) (Guardado II), cert. denied, 144 S. Ct. 2683 (2024).[5]

Here, as the Commonwealth properly concedes, the judge did
not instruct the jury that the Commonwealth must prove that the
defendant did not possess a license to carry or an FID card.
Nor did the Commonwealth present evidence that the defendant was
unlicensed to possess the firearm or that he did not possess an
FID card.  Accordingly, and contrary to the defendant's double
jeopardy claim, the defendant is entitled to a new trial on the
charges of carrying a firearm without a license and possession
of ammunition without an FID card.  See Guardado II, 493 Mass at
12.

4.  Conclusion.  The judgments of conviction of second-
degree murder, armed assault with intent to murder, and assault
and battery by means of a dangerous weapon, are affirmed.  The
judgments of conviction of possession of a firearm without a

---

[5] Because the defendant's direct appeal was pending at the
time of the issuance of Bruen on June 23, 2022, he is entitled
to the application of Guardado I and Guardado II.  Commonwealth
v. Gibson, 492 Mass. 559, 579 (2023); Lugo, 104 Mass. App. Ct.
at 321.

12

license and possession of ammunition without an FID card are vacated, and those verdicts are set aside.

So ordered.

By the Court (Meade, Sacks &
Hodgens, JJ.[6]),

Clerk

Entered:  February 11, 2025.

---

[6] The panelists are listed in order of seniority.