COMMONWEALTH vs. MICHAEL L. CRAWFORD.

Suffolk. November 4, 1999. - January 28, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANLY, SPINA, & COWIN, JJ.

*Practice, Criminal,* Postconviction relief, Sentence. *Constitutional Law,* Double jeopardy, Vagueness of statute. *Death. Homicide. Common Law Crime. Statute,* Construction. *Waiver. Wanton or Reckless Conduct. Words,* "Viability."

In the circumstances of an involuntary manslaughter case, in which the defendant had been convicted of killing his girl friend and her unborn fetus with a single gunshot, there was no error in a judge's denial of the defendant's first motion for postconviction relief and his finding that the separate sentences for killing each victim by a single criminal act did not violate double jeopardy principles under either the United States Constitution or State common law. [685-688]

A Superior Court judge correctly deemed waived certain issues raised in a criminal defendant's second motion for new trial, where the issues (the asserted unconstitutional vagueness of the term "viability," as applied to a fetus under criminal homicide statutes [689]; the asserted inadequacy of the judge's instruction on viability taken from *Roe* v. *Wade,* 410 U.S. 113, 160 [1973] [689-690]; the asserted failure to prove the defendant's awareness of the fetus's existence and viability [691-692]) could have been, but were not, raised on direct appeal in 1994.

This court stated that, in criminal homicide cases in which the victim is a fetus, the judge preferably should instruct the jury on viability of the fetus based on the definition in *Colautti* v. *Franklin,* 439 U.S. 379, 388-389 (1979) ("reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support"). [690]

ABRAMS, J., with whom MARSHALL, C.J., joined, concurring, expressed the view that this case, involving a conviction of voluntary manslaughter, did not directly raise the issue of the scienter required for a conviction of homicide of a viable fetus in utero, and, for that reason, reiterated the views expressed in the dissent in *Commonwealth* v. *Cass,* 392 Mass. 799, 808 (1984), and in the concurrence in *Commonwealth* v. *Lawrence,* 404 Mass. 378 (1989). [692-693]

INDICTMENTS found and returned in the Superior Court Department on July 19, 1990.

Following review by this court, 417 Mass. 358 (1994), a motion to correct sentences, filed on October 24, 1996, was heard

by *Vieri Volterra,* J., and additional postconviction motions, filed on January 7, 1998, were heard by *Elizabeth B. Donovan,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Matthew S. Robinowitz* for the defendant.

*John P. Zanini,* Assistant District Attorney (*Lisa Scalcione Dreitlein,* Assistant District Attorney, with him) for the Commonwealth.

SPINA, J. The defendant, Michael L. Crawford, was convicted of the involuntary manslaughter of his girl friend and her unborn fetus. His convictions were affirmed on direct appeal. *Commonwealth* v. *Crawford,* 417 Mass. 358 (1994). The defendant filed a postappeal "motion to correct sentences" under Mass. R. Crim. P. 30 (a), 378 Mass. 900 (1979), claiming that double jeopardy principles under the Fifth and Fourteenth Amendments to the United States Constitution as well as under our common law barred his multiple convictions and consecutive sentences for a single criminal act. That motion was denied on February 27, 1997, and the defendant appealed.[1] On January 7, 1998, the defendant filed a "motion to vacate the denial of his original rule 30 motion and to amend his rule 30 motion,"[2] together with an "amended motion for a new trial and/or to correct his sentences" under Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). In his amended motion the defendant renewed his double jeopardy claim and raised claims that (1) the homicide statutes are unconstitutionally vague as applied to a viable fetus, (2) the trial judge's instruction on viability unconstitutionally

---

[1]The defendant's notice of appeal was filed on April 24, 1997, and we dismissed the appeal on the Commonwealth's motion. We subsequently reinstated the appeal from the denial of the first motion on the defendant's showing that notice of denial of the first motion had not been sent until March 31, 1997. We reject the Commonwealth's argument that the appeal from the denial of the first motion was not timely.

[2]The defendant's claim that the motion judge abused her discretion by denying his motion to amend the first motion to include new issues is without merit. The first motion had been argued, considered, and denied. Not only did the defendant file his motion to amend more than ten months after his original motion was denied, a period of time which the motion judge could have concluded was unreasonable, but he sought to include three new issues unrelated to the one issue previously presented. Cf. *Commonwealth* v. *Cronk,* 396 Mass. 194, 197 (1985) (availability of appellate review does not preclude reconsideration by judge of prior order provided that request for reconsideration is made within reasonable time).

lowered the Commonwealth's burden of proof, and (3) the judge's instructions incorrectly permitted the jury to find the defendant guilty of homicide of the fetus without proof of his knowledge of its existence and viability. The "amended motion" impliedly was treated as a second motion under rule 30 and was denied on grounds that the issues raised had been waived. We affirm the denial of all motions.

The background facts are set forth in *Commonwealth* v. *Crawford, supra* at 359-361, which we briefly summarize. On July 7, 1990, the defendant shot Kimberly Noblin in the face. Noblin's body was found more than four hours later, after rigor mortis had set in. At the time of the shooting, Noblin was at least seven months pregnant[3] with the defendant's baby. A medical examiner offered uncontroverted testimony that the fetus died of oxygen deprivation but had been viable, "meaning it was old enough and had mature enough systems to survive outside of the mother." *Id.* at 359 n.1. At trial, the defendant offered alibi evidence that was contradicted by other witnesses.

1. *First motion under rule 30.* The defendant's first motion for postconviction relief under rule 30 was filed after his direct appeal. The motion judge, who was not the trial judge, considered the merits of the motion and denied it, finding that the defendant's separate sentences for killing both Noblin and her viable fetus did not violate double jeopardy principles. Where a judge fully considers the merits of an original motion for postconviction relief filed after a defendant's direct appeal, containing arguments that could have been but were not argued on direct appeal, and denies the motion, the proper test for appellate review of the denial of the motion is whether any error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Hallet,* 427 Mass. 552, 553 (1998); *Commonwealth* v. *Curtis,* 417 Mass. 619, 623 (1994).

The defendant argues that, because the fetus and the mother were killed as a result of the same criminal act, his multiple convictions and sentences constitute double punishment in violation of double jeopardy principles. He further contends that double jeopardy principles preclude multiple punishments in circumstances where the court, rather than the Legislature, has defined the crime.

---

[3]"At the time of the shooting, the male fetus weighed about two and one half pounds, was fifteen inches in length, and was between twenty-eight and thirty weeks in gestational age." *Commonwealth* v. *Crawford,* 417 Mass. 358, 359 n.1 (1994).

"The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Mahoney* v. *Commonwealth*, 415 Mass. 278, 283 (1993). We are concerned with the third category of protection, which requires us to determine whether the Legislature intended to authorize imposition of multiple punishments for concurrent violations of the same statute arising out of a single transaction. See *Ohio* v. *Johnson*, 467 U.S. 493, 499 (1984); *Commonwealth* v. *Levia*, 385 Mass. 345, 347 (1982).

In *Levia*, we upheld the imposition of consecutive sentences for the armed robbery of two individuals. in the course of a single incident as nonviolative of double jeopardy because the statutory emphasis on the assault element of robbery was seen as a manifestation of legislative intent authorizing separate punishment as to each person robbed. We held that robbery constituted an offense against each person, and was not just one offense against the owner of the property taken. *Id.* at 350-351. Citing our holding in *Levia*, we later observed that, "[w]henever a single criminal transaction gives rise to crimes of violence which are committed against several victims, then multiple indictments (and punishments) are appropriate." *Commonwealth* v. *Donovan*, 395 Mass. 20, 31 (1985). Consecutive sentences are commonly imposed for multiple homicides arising out of the same incident. See, e.g., *Commonwealth* v. *Wilson*, 381 Mass. 90, 123 (1980) (three consecutive sentences for convictions of felony-murder in the first degree arising from armed home invasion); *Commonwealth* v. *Rhoades*, 379 Mass. 810, 812 n.12 (1980) (consecutive sentences for convictions of murder in the second degree arising from arson); *Commonwealth* v. *Davila*, 17 Mass. App. Ct. 511, 515 (1984) (three consecutive sentences for convictions of murder in the second degree arising from arson); *Commonwealth* v. *Meehan*, 14 Mass. App. Ct. 1028, 1029 (1982) (consecutive sentences for double vehicular homicide appropriate where "the Legislature has expressly provided for punishment of any violation of [G. L. c. 90,] § 24G[,] which causes the death of 'another person' "). We have implicitly approved the imposition of consecutive sentences for crimes of violence committed against multiple victims because the appropriate "unit of prosecution" for such

crimes is the person assaulted or killed, not the underlying criminal act. *Commonwealth* v. *Donovan, supra,* quoting *People* v. *Wakeford,* 418 Mich. 95, 112 (1983).

In *Commonwealth* v. *Cass,* 392 Mass. 799, 807 (1984), we announced our intent to depart from the common-law rule[4] that the object of a homicide must be a person who had been born alive. We said, "[i]f a person were to commit violence against a pregnant woman and destroy the [viable] fetus within her, we would not want the death of the fetus to go unpunished" (footnotes omitted). Thereafter, in *Commonwealth* v. *Lawrence,* 404 Mass. 378 (1989), we affirmed the convictions of a defendant who received consecutive sentences for the murder in the first degree of a sixteen year old girl and the involuntary manslaughter of the twenty-seven week old fetus she was carrying. Our common law expressly authorizes multiple punishment for unlawfully killing a woman and her viable fetus.

There is no merit to the defendant's contention that he may not be punished for two homicides when he fired only one shot. The "probable harmful consequences," *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 747 (1975), of a single gunshot, like the fire started by a single match or the car running out of control due to a single reckless miscalculation, are not limited to one death. The defendant's reliance on *Ladner* v. *United States,* 358 U.S. 169 (1958), is misplaced. There a defendant received consecutive sentences for wounding two Federal officers with a single shotgun blast. In reversing the convictions, the Court looked to the statute to determine whether Congress authorized such punishment and determined that the statute was ambiguous. *Id.* at 177. It did not decide the case on double jeopardy grounds. *Id.* at 173. Significantly, the Court did not hold that multiple punishments could never be imposed for each victim of a single act.

The defendant next contends that consonant with principles of double jeopardy the Legislature alone may authorize multiple punishments for criminal acts, and that our decision in *Commonwealth* v. *Cass, supra,* which paved the way for his prosecution for unlawfully killing the fetus, violated those principles. The defendant relies on a passage from *Brown* v. *Ohio,* 432 U.S. 161, 165 (1977), where the Supreme Court said:

---

[4]See *Commonwealth* v. *Edelin,* 371 Mass. 497, 512-513 (1976) (restating rule that unborn fetus could not be object of manslaughter); *Dietrich* v. *Northampton,* 138 Mass. 14, 15 (1884); *Commonwealth* v. *Parker,* 9 Met. 263, 266 (1845).

> "The Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense . . . ."

The passage from *Brown* does not support his proposition. There the Supreme Court went on to explain that the double jeopardy clause provides a check on courts to assure that they do not exceed their authority to punish. *Id.* The Court did not say, nor did it imply, that for double jeopardy purposes courts from common-law jurisdictions could not define crimes. It merely admonished that punishment must fall within authorized limits. The statute proscribing manslaughter, G. L. c. 265, § 13, is a codification of the common law, *Commonwealth* v. *Webster,* 5 Cush. 295, 303 (1850), a matter within our power to develop. The Legislature has exercised its authority over the subject of manslaughter only to the extent of setting the punishment. It has left definition of the crime for the courts. *Id.* We exercised our authority to develop common law in *Commonwealth* v. *Cass, supra* at 803-807, by holding that a viable fetus is a person for purposes of homicides committed after that decision. See *Commonwealth* v. *Lawrence, supra* at 384. Our decision to extend criminal common-law protections to viable fetuses did not offend the double jeopardy clause.

We see no basis in these circumstances for providing any greater protection under our common-law principles of double jeopardy than that afforded by the Fifth Amendment. See *Lydon* v. *Commonwealth,* 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980). There was no error in the denial of the defendant's first rule 30 motion.

2. *Second motion under rule 30.* Having said that the motion to amend the first motion was properly denied, see note 2, *supra,* the "amended" motion was properly treated as a second motion for a new trial. The second motion was denied by another judge on grounds that the issues raised were waived. "All grounds for relief claimed by a defendant under . . . this rule shall be raised by the defendant in his original or amended motion. Any grounds not so raised are waived unless the judge in his discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been

raised in the original or amended motion." Mass. R. Crim. P. 30 (c) (2), 378 Mass. 900 (1979). See *Commonwealth* v. *Deeran*, 397 Mass. 136, 140-141 (1986). Application of the doctrine of waiver is reviewable. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 641 (1997). The test for waiver is whether the theory on which the defendant's argument rests has been sufficiently developed to put him on notice that the issue is a live issue that could have been raised in his first motion. *Id.* at 639. Having considered the defendant's double jeopardy argument in the more favorable context of his first rule 30 motion, we turn to the other issues raised in his second motion.

a. *Vagueness.* The defendant claims that the term "viability," as applied to a fetus under criminal homicide statutes, is unconstitutionally vague because it has not been defined by the Legislature or by the courts. A statute is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning." *Commonwealth* v. *Sefranka*, 382 Mass. 108, 110 (1980), quoting *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 (1926). If a statute has been clarified by judicial explanation, however, it will withstand a challenge on grounds of unconstitutional vagueness. *Rose* v. *Locke*, 423 U.S. 48, 50-52 (1975); *Commonwealth* v. *Adams*, 389 Mass. 265, 271 (1983). A claim of facial vagueness is properly brought before trial. See Mass. R. Crim. P. 13 (c) (2), 378 Mass. 871 (1979) ("A defense or objection which is capable of determination without trial of the general issue shall be raised before trial by motion"). Cf. *Commonwealth* v. *Jasmin*, 396 Mass. 653, 655 (1986) (where defense is void as applied, factual determination is required and can only be made during trial); *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 545 (1994).

In the civil context, we defined a "viable fetus" to be a fetus "so far formed and developed that if then born it would be capable of living." *Torigian* v. *Watertown News Co.*, 352 Mass. 446, 448 (1967), citing *Keyes* v. *Construction Serv., Inc.*, 340 Mass. 633, 637 (1960). In *Commonwealth* v. *Cass, supra* at 807, decided six years before the deaths in this case, we extended protection under our criminal law to viable fetuses. See *Commonwealth* v. *Lawrence, supra* at 383-384. By the time of these deaths in 1990, the defendant was on notice that killing a "viable fetus," as defined in the common law, is a punishable offense. As such, the term had been defined and it is not unconstitutionally vague. The issue properly was deemed

waived. *Commonwealth* v. *Belle Isle*, 44 Mass. App. Ct. 226, 230 (1998).

b. *Lowered burden.* The defendant claims that the Commonwealth's burden of proof was lowered when the trial judge defined viability as "having reached such a stage of development as to be *potentially* able of living outside the mother's womb, notwithstanding artificial aid" (emphasis added). Relying on a California case, the defendant argues that the proper definition of viability is that the fetus must attain such form and development of organs as to be " '*normally* capable of living outside of the uterus' . . . a better than even chance — a probability" (emphasis added). *People* v. *Davis*, 7 Cal. 4th 797, 814 (1994).

The word "potential," as defined in Black's Law Dictionary 1168 (6th ed. 1990), means "[e]xisting in possibility but not in [f]act. *Naturally and probably* expected to come into existence at some future time, though not now existing" (emphasis added). Thus, the term "potentially" connotes a degree of probability greater than a "possibility," the term which the court in *People* v. *Davis*, *supra*, found lacking because it impermissibly lowered the threshold for viability to the point where a fetus incapable of surviving outside the womb would nonetheless be considered viable. Given that the trial judge's use of the term "potentially" had the effect of instructing the jury that they had to find that Noblin's fetus had a "better than even chance" for survival before they could convict the defendant, the instruction given here did not lower the Commonwealth's burden. See *id.*

The Supreme Court had addressed the meaning of "viability" on two occasions before the defendant's trial. In *Colautti* v. *Franklin*, 439 U.S. 379, 388-389 (1979), the Court said, "Viability is reached when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support." In *Roe* v. *Wade*, 410 U.S. 113, 160 (1973), the Court said that a fetus is viable if it is "*potentially* able to live outside the mother's womb, albeit with artificial aid" (emphasis added). The issue had been sufficiently developed at the time of the defendant's trial to alert him that it was a live issue. It is waived.

Although we have concluded that the judge's instruction, taken from *Roe* v. *Wade*, *supra*, was adequate, the definition of "viability" used in *Colautti* v. *Franklin*, *supra* ("reasonable

likelihood of the fetus' sustained survival outside the womb, with or without artificial support"), is preferable. It employs familiar language most often used in jury instructions, and should be used in trials occurring hereafter.

c. *Intent and knowledge.* The defendant's contention that the Commonwealth should be required to show that he knew of the fetus's existence and viability is without merit. The defendant was convicted of involuntary manslaughter, a crime which does not require proof of awareness of a particular victim. See *Commonwealth* v. *Welansky*, 316 Mass. 383, 401 (1944). The Commonwealth need only prove wanton and reckless conduct resulting in the death of a person. Wantonness and recklessness are determined by the conduct involved, not the resulting harm. See *Commonwealth* v. *Bouvier*, 316 Mass. 489, 495 (1944), citing *Commonwealth* v. *Welansky, supra.*

The Commonwealth reasonably could not be required to prove that the defendant knew the fetus was viable because viability is an issue that involves a medical judgment. See *Colautti* v. *Franklin, supra* at 388-389; *Planned Parenthood of Cent. Mo.* v. *Danforth,* 428 U.S. 52, 64 (1976) ("the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician"). See also *Commonwealth* v. *Lawrence, supra* at 399 (Abrams, J., concurring) ("The mental element needed for conviction of murder cannot depend on a medical determination that can only be made by experts after the fact"). Thus, the defendant's awareness of the fetus's existence and viability was irrelevant. The issues of existence and viability also had been sufficiently developed as of the time of the defendant's trial for him to have raised it at that time. They are waived.

Even if these issues had not been waived, the result would not be different. At trial, the defendant presented evidence of alibi, a strategy which was not unreasonable in the circumstances. The ability to instill reasonable doubt that he had killed Noblin would necessarily benefit his defense of the indictment alleging that he killed her fetus. Interjecting issues about the defendant's knowledge of the existence of the fetus or its viability would have diluted his alibi defense. They also are issues that appear to have had little chance of success. The defendant lived with Noblin and their four year old daughter approximately three days a week at Noblin's apartment. There was evidence that the defendant knew that Noblin was pregnant,

and that he was the father of her fetus, *Commonwealth* v. *Crawford*, 417 Mass. 358, 359 (1994). The jury easily could have found that the defendant was aware of the existence of the fetus. The medical testimony regarding viability was uncontroverted and strong.[5] We may presume that the defendant's failure to raise the issues means that he was either not interested in them, or that he thought they were not critical to his case. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 641, 645 n.18 (1997). They appear to have been selectively omitted as live issues for good reason. See *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986).

The denials of the defendant's motions under Mass. R. Crim. P. 30 are affirmed.

*So ordered.*

ABRAMS, J. (concurring, with whom Marshall, C.J., joins). In *Commonwealth* v. *Cass*, 392 Mass. 799, 808 (1984), the court extended the vehicular homicide statute to include a viable fetus. See G. L. c. 90, § 24G (*b*). I joined in the dissent to that case, see *id.* at 809 (Wilkins, J., dissenting, with whom Liacos and Abrams, JJ., joined), because "[t]he public policy of the Commonwealth in the creation of crimes is not for this court to determine, but for the Legislature." *Commonwealth* v. *Corbett*, 307 Mass. 7, 8 (1940).

Subsequently, in *Commonwealth* v. *Lawrence*, 404 Mass. 378 (1989), the court affirmed convictions of the murder in the first degree of a sixteen year old girl and the involuntary manslaughter of her twenty-seven week old fetus. *Id.* at 397. In my concurrence to that case, I reiterated my commitment to the views expressed by the dissent in *Cass*, and I noted that "[t]he court's decision does not make clear what one must know, or should know, about the pregnancy, the condition of the fetus, and viability at the time of the acts of violence." *Lawrence, supra* at

[5]The medical examiner's testimony that the fetus was between twenty-eight and thirty weeks in gestational age comports with the observations in *Roe* v. *Wade*, 410 U.S. 113, 163 (1973), where the Court said "[v]iability is usually placed at about seven months (28) weeks but may occur earlier, even at 24 weeks." The fetus could have been determined to have been viable based on its age. See *Commonwealth* v. *Edelin*, 371 Mass. 497, 500-501 (1976). See also G. L. c. 112, § 12M.

399 (Abrams, J., concurring), citing *Colautti* v. *Franklin*, 439 U.S. 379, 390 (1979); *Hollis* v. *Commonwealth*, 652 S.W.2d 61, 64 (Ky. 1983).

Given that *Cass* and *Lawrence* remain the law of this Commonwealth, I concur in the court's decision in the instant case. If one takes as a premise that a viable fetus in utero can be the victim of a homicide, then the court's legal conclusions follow. However, I continue to adhere to the views expressed in the dissent in *Cass* and in my concurrence in *Lawrence*.

If a "person of ordinary intelligence" cannot determine that "his contemplated conduct is forbidden" by a law, then that law runs afoul of the due process required by our Constitution. See *Colautti* v. *Franklin, supra*. This case, like *Cass* and *Lawrence*, does not directly raise the issue of the scienter required for a conviction of homicide of a viable fetus in utero because the defendant was convicted of involuntary manslaughter. "The Commonwealth need only prove wanton and reckless conduct resulting in the death of a person. Wantonness and recklessness are determined by the conduct involved . . . ." *Ante* at 691.

However, the court also writes that "[t]he Commonwealth reasonably could not be required to prove that the defendant knew the fetus was viable because viability is an issue that involves a medical judgment." *Ante* at 691. In support of this dictum, the court quotes my concurrence in *Lawrence, supra* at 399 (Abrams, J., concurring), that "[t]he mental element needed for conviction of murder cannot depend on a medical determination that can only be made by experts after the fact." *Ante* at 691.

It was the concern that a person of ordinary intelligence might not be able to determine that he or she was committing two homicides that prompted me to write the words quoted by the court. See *Lawrence, supra*. Where proof offered at a criminal trial focuses on the victim's medical status and not the defendant's acts and state of mind, I think the court strays from the purposes of the criminal laws. "The focus of a criminal trial must be on the defendant's mental state, not the victim's physical condition." *Id.*

As I observed in *Lawrence, supra*, "[s]uch issues . . . are not before us in this case. They await a case-by-case determination." However, the fact that such issues continue to lurk in the law of homicide as this court has extended that law suggests to me that the creation of crimes is best left to the Legislature, as it always had been until *Cass, supra*.